UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **KEITH BELL,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**CHRISTOPHER MANHERTZ,**<br><br>    **Defendant.** | **Case No. 1:19-cv-1219-RP** |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dr. Keith Bell ("Plaintiff" or "Dr. Bell"), sues Defendant, Christopher Manhertz ("Defendant" or "Manhertz"), and alleges:

### Introduction

1.   This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act").

### The Parties

2.   Dr. Bell is an individual residing in Travis County, Texas.

3.   Defendant is an individual residing in Lancaster County, South Carolina.

### Jurisdiction and Venue

4.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (patents, copyrights, trademarks and unfair competition).

5.   This Court has personal jurisdiction over Defendant because he engaged in substantial and not isolated activity or has continuous and systematic contacts with Texas.

6.   Indeed, Defendant purposely directed his activities towards Texas, committed (in whole or part) the intentional tort at issue in Texas, and/or purposefully availed himself of the

1

privilege of conducting activities in Texas. Dr. Bell suffered damages from Defendant's wrongful conduct in Texas.

7. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391, because it is where a substantial part of the events or omissions giving rise to the claims occurred, and/or a substantial part of property that is the subject of the action is situated.

## Factual Background

### A. Dr. Keith Bell – A Respected Authority in Sports Psychology and Performance Consulting

8. Dr. Bell is an internationally recognized sports psychology and performance consultant. He has worked as a sports psychologist with over 500 athletic teams, including the Olympic and national teams for the United States, Canada, Australia, New Zealand, Hong Kong, Fiji, and the Cayman Islands.

9. In addition to his work with sports teams, Dr. Bell speaks at national and international coaching symposia. Among others, he has been a featured speaker with the American Swim Coaches Association, Australian Coaches Association, Canadian Coaches Association, Japanese Coaches Association, North American Soccer Association, and British Swim Coaches Association.

10. Dr. Bell has also enjoyed success as an athlete and coach. He is a four-time collegiate All-American swimmer, holds numerous world and national masters swim records, and has coached U.S. national, university, collegiate, high school, and club swimming teams.

11. Dr. Bell is also a prolific writer, having authored and published 10 books and over 80 articles relating to sports psychology and sports performance. He also has been a regular columnist for national swimming publications such as *Swimmers, Swimmers Coach, SwimSwam*, and *Swim Texas Magazine*, and is a periodic contributor to *Austin Fit Magazine*.

B.  **The Infringed Works -** *Winning Isn't Normal* **and the WIN Passage**

12. In 1981, Dr. Bell wrote the book entitled *Winning Isn't Normal*, which was first published in 1982 and has since enjoyed substantial acclaim, distribution, and publicity.

13. A particular passage from page 8 of *Winning Isn't Normal*, attached as **Exhibit A**, distills the essence of the book and is the heart of *Winning Isn't Normal*. Dr. Bell also created a modified version of this passage (the "WIN Passage").

14. *Winning Isn't Normal* and the WIN Passage (together the "Infringed Works") are original works of authorship fixed in tangible medium.

15. Dr. Bell is the sole author of and the exclusive owner of the copyrights to the Infringed Works.

16. Dr. Bell registered *Winning Isn't Normal* with the U.S. Copyright Office, and was issued Certificate of Registration TX 2,672,644 (the "'644 Registration") for it on or about September 21, 1989. A true and correct copy of the '644 Registration is attached as **Exhibit B**.

17. Dr. Bell registered the WIN Passage with the U.S. Copyright Office, and was issued Certificate of Registration TX 8,503,571 (the "'571 Registration") for it on or about November 6, 2017. A true and correct copy of the '571 Registration is attached as **Exhibit C**.

18. Pursuant to 17 U.S.C. § 106, Dr. Bell has the exclusive rights to: (a) reproduce the Infringed Works in copies, (b) prepare derivative works based on the Infringed Works, (c) distribute copies of the Infringed Works to the public, and (d) display the Infringed Works publicly.

19. Due to the popularity of *Winning Isn't Normal*, Dr. Bell has been able to increase his international recognition as an authority in sports psychology and sports performance and been asked to speak at conferences, symposia, and other engagements.

20. Dr. Bell has invested substantial time and effort to writing, publishing, promoting, distributing, offering to sell, and selling copies of *Winning Isn't Normal*.

21. Dr. Bell has made and continues to make meaningful efforts to create a market for the Infringed Works and to protect and enjoy the copyrights to the same. As part of these efforts, Dr. Bell creates, markets, and sells works derived from *Winning Isn't Normal*, such as posters and t-shirts that display the WIN Passage.

22. Currently, Dr. Bell sells *Winning Isn't Normal* and/or other products with the WIN Passage through various outlets, including Amazon.com and WinningIsntNormal.weebly.com (the "WIN Online Store").[1] He also markets and sells copies of *Winning Isn't Normal* and/or other products with the WIN Passage at seminars and speaking events.

23. Dr. Bell owns the domains WinningIsntNormal.com and KeelPublications.com which both point to WinningIsntNormal.weebly.com (the "WIN Online Store"), the e-commerce website where Dr. Bell sells copies of *Winning Isn't Normal* and other products containing the WIN Passage.

24. Dr. Bell takes great care to provide public notice of his copyrights in the Infringed Works. Pertinent copyright notices are contained: (a) in physical and electronic copies of *Winning Isn't Normal*; (b) on other products containing the WIN Passage, and on images of those products; (c) and on the websites where *Winning Isn't Normal* and products containing the WIN Passage are sold (*i.e.* Amazon.com and WinningIsntNormal.weebly.com). The WIN Online Store even contains information on how to contact Dr. Bell about obtaining permission to use the WIN Passage or other portions of *Winning Isn't Normal*. Dr. Bell marks the digital

---

[1] The domains WinningIsntNormal.com and KeelPublications.com, both of which Dr. Bell owns or controls, point or redirect users to the WIN Online Store.

4

images of derivative works (such as posters) or excerpts that he posts online or otherwise distributes with conspicuous copyright watermarks.

25. Dr. Bell has offered and continues to offer licenses at fair and reasonable rates to others who wish to copy, display, distribute, create derivatives from, or otherwise use the Infringed Works on the internet or in traditional publishing mediums.

**C. Defendant and his Infringements of Dr. Bell's Copyrights**

26. Defendant is a public figure. Specifically, he is an elite professional football player, competing in the National Football League.

27. Defendant was employed by and played for New Orleans Saints in 2016; he has been employed by and played for the Carolina Panthers, since approximately October 2016.

28. After reasonable opportunity for investigation or discovery, the evidence will likely show that Defendant regularly travels to Texas and does work in Texas in connection with professional football.

29. After reasonable opportunity for investigation or discovery, the evidence will likely show that a material portion of Defendant's income received in connection with professional football is earned in or derived from activities in Texas.

30. Defendant owns, operates, maintains, manages, and/or controls the verified[2] "Chris Manhertz" Twitter account, @C_Manhertz ([Twitter.com/C_Manhertz](Twitter.com/C_Manhertz)) (the "Twitter Account").

31. Defendant's Twitter Account follows and is followed by professional and amateur athletes, coaches, other sports administrators, and fans.

---

[2] "The blue verified badge ✓ on Twitter lets people know that an account of public interest is authentic." Twitter – Help Center, *About Verified Accounts*, https://help.twitter.com/en/managing-your-account/about-twitter-verified-accounts (last accessed Dec. 16, 2019).

32. Defendant's Twitter account follows and is followed by persons residing and/or located in Texas and the Western District of Texas.

33. Defendant's Twitter Account was followed by at least 32 accounts of apparent Texas residents, at least 14 of which apparently reside in the Western District of Texas. *See* **Exhibit D**.

34. Defendant used his Twitter Account to promote a variety of products from different sponsors, corporate benefactors, companies, or brands. *See* **Exhibit E**.

35. Defendant regularly interacts with other users on twitter through likes, comments, and retweets, both by Defendant and the other users.

36. Defendant's Twitter Account had approximately:

- 1,790 followers on or around April 28, 2017;
- 1,831 followers on or around June 25, 2017;
- 2,254 followers on or around January 19, 2018; and
- 3,038 followers at the time of filing this action.

37. Defendant used his Twitter Account to promote his personal brand as a professional athlete, from which he derived financial benefits.

38. After reasonable opportunity for investigation or discovery, the evidence will likely show that Defendant used the Twitter Account to promote and/or sell various brands or products – either directly or through the now inaccessible website, LikeAPro.com, that had a link on Defendant's Twitter profile – from which Defendant received financial benefit.

39. On or about April 25, 2017, Defendant posted/sent a tweet (the "Infringing Tweet") containing a picture of a textual reproduction or derivative of the Infringed Works. Select evidence of infringement is attached as **Exhibit F**.

40. Sometime thereafter Defendant "pinned" the Infringing Tweet to his Twitter Account profile, *see* **Exhibit F**, "so that when other visit [Defendant's] profile, it is the first Tweet they … see."[3]

41. Defendant's Infringing Tweet was commented on by at least one Twitter user, "re-tweeted" by at least 40 Twitter users, and "liked" by at least 79 Twitter users. *See* **Exhibit F**.

42. Defendant distributed the Infringing Tweet to no less than those individuals following Defendant's Twitter Account.

43. Defendant publicly displayed the Infringing Tweet to no less than all those individuals who viewed Defendant's Twitter profile while the Infringing Tweet was "pinned."

44. Defendant was not licensed, authorized, or permitted by Dr. Bell to reproduce, modify, distribute, display, or otherwise use the Infringed Works.

45. Defendant knew or should have known that he was not authorized to reproduce, modify, distribute, display, or otherwise use the Infringed Works.

46. Defendant's unauthorized distribution and display of the Infringed Works, or unauthorized derivative thereof, via his Twitter Account continued from on or about April 25, 2017 through at least January 19, 2018, without appreciable gap.

47. Dr. Bell has not received compensation from Defendant or any third-party for Defendant's reproduction, modification, distribution, display, or other use of the Infringed Works.

**<u>Miscellaneous</u>**

48. All conditions precedent to bringing this action have occurred or been waived.

---

[3] Twitter – Help Center, *How to Customize Your Profile*, https://help.twitter.com/en/managing-your-account/how-to-customize-your-profile (last visited Dec. 16, 2019).

49. Dr. Bell has retained counsel for this litigation and is obligated to pay said counsel a reasonable fee for its services.

## COUNT I
### Direct Copyright Infringement

50. The allegations set forth in paragraphs 1-49 are hereby re-alleged as if fully set forth in this cause of action.

51. Dr. Bell created and owns the copyrights to the Infringed Works, two (2) separate and distinct original textual works that are the subject of the '571 and '644 Registrations. *See* **Exhibits A-C**.

52. Without Dr. Bell's authorization, consent, or permission, Defendant: (a) reproduced the Infringed Works, or an unauthorized derivative thereof, in copies as electronic files; (b) distributed copies of the Infringed Works, or an unauthorized derivative thereof, to the public via Twitter; and (c) displayed the Infringed Works, or an unauthorized derivative thereof, publicly, including via Twitter. *See* **Exhibit F**.

53. As a result of the foregoing, Defendant directly infringed Dr. Bell's exclusive rights to: (a) reproduce the Infringed Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (b) prepare derivative works based upon the Infringed Works, in violation of 17 U.S.C. §§ 106(2) and 501; (c) distribute copies of the Infringed Works to the public by sale or other transfer of ownership, or by rental lease, or lending, in violation of 17 U.S.C. §§ 106(3) and 501; and (d) display the Infringed Works publicly, in violation of 17 U.S.C. §§ 106(5) and 501, by (i) displaying the Infringed Works in a place open to the public or at any place where a substantial number of persons outside of a normal circle of family and social acquaintances is gathered and/or (ii) transmitting or otherwise communicating said display of the Infringed Works by

means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

54. Defendant's infringements of Dr. Bell's copyrights to each of the two (2) individual Infringed Works constitutes a separate and distinct act of infringement.

55. After reasonable opportunity for further investigation or discovery, the evidence will likely show that Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

56. Dr. Bell has suffered substantial monetary damages as a direct and proximate result of Defendant's infringements. Dr. Bell suffered these damages in Travis County, Texas.

57. Defendant knew or should have known that the damages from his infringements would be / were suffered by Dr. Bell in Texas and this juridical district.

58. After reasonable opportunity for further investigation or discovery, the evidence will likely show that Defendant has unjustly profited from its infringing activities.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(A) Awarding Plaintiff the actual damages suffered as a result of the infringement and Defendant's profits that are attributable to the infringement, pursuant to 17 U.S.C. § 504(b), or statutory damages in an amount up to $150,000 per infringed work, pursuant to 17 U.S.C. § 504(c), at Plaintiff's election, pursuant to 17 U.S.C. § 504(a);

(B) Awarding Plaintiff his reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505;

(C) Awarding Plaintiff pre-judgment and post-judgment interest, pursuant to 28 U.S.C. § 1961; and

(D)     Granting Plaintiff such other and further relief this Court deems just and proper.

## **Demand For Jury Trial**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 1, 2020.

Respectfully submitted,

**MORGAN & MORGAN, P.A.**
**Business Trial Group**
703 Waterford Way, Suite 1050
Miami, Florida 33126
Tel: (305) 929-1922
Fax: (305) 929-1941


*/s/ David Tamaroff*
**David F. Tamaroff, Esq.**
Florida Bar No. 92084
Email: dtamaroff@forthepeople.com
*Counsel for Plaintiff, Keith Bell*